UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ESTATE OF SAOUN POL and J.P., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF STOCKTON, STOCKTON POLICE DEPARTMENT, ERIC JONES, JORGE ANDRADE, BRADLEY MILLER, and DOE 1 to 10, <br><br> Defendants. | No. 2:21-cv-00788 WBS AC <br><br> MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS |

----oo0oo----

Plaintiff J.P., the son of the late Saoun Pol ("Pol" or "decedent"), brings this case individually and in his representative capacity as successor-in-interest to Pol, alleging eight claims against the City of Stockton ("the City"), the Stockton Police Department, Police Chief of the Stockton Police Department Eric Jones ("Jones"), and Stockton Police Department police officers Jorge Andrade ("Andrade") and Bradley Miller ("Miller"). Defendants now move to dismiss portions of

1

plaintiff's First Amended Complaint ("FAC" (Docket No. 16)) pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss (Docket No. 17).)

<u>Factual and Procedural Background</u>

On May 4, 2019, the Stockton Police Department received 911 reports that a man, possibly Asian or Hispanic, was "acting erratically," dressed only in boxer shorts, walking in the middle of the road, jumping on cars, and appeared to be intoxicated. (FAC at ¶¶ 17-21).  One report stated that he was hitting a door with something.  (<u>Id.</u> at ¶ 20).  Andrade and Miller were dispatched to the neighborhood of the 911 reports with this information.  (<u>Id.</u> at ¶¶ 18-19).

As the officers arrived, Pol was standing in the bed of a truck, swinging his arms, and had a bat in hand.  (<u>Id.</u> at ¶¶ 22-23).  The FAC alleges that upon first sighting Pol, Andrade instructed Miller "to phone dispatch and inform dispatch that they 'would have the suspect at gun point.'"  (<u>Id.</u> at ¶ 23). Andrade, with his gun at ready, yelled out to Pol to show his hands.  (<u>Id.</u>)  Pol then raised his hands while still holding the baseball bat.  (<u>Id.</u>)  Andrade, stepped one foot out of the police cruiser, and fired shots at Pol.  (<u>Id.</u>)  Andrade phoned dispatch reporting shots were fired and to request medics, but Andrade and Miller did not provide "direct aid" to Pol.  (<u>Id.</u> at ¶ 24).  Pol died from the gunshot wounds later that same day.  (<u>Id.</u> at ¶ 25).

On May 3, 2021, plaintiff initiated this action, and per stipulation filed the FAC on October 1, 2021.  The FAC contains claims for (1) excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, (2) <u>Monell v.</u>

Dep't of Soc. Servs., 436 U.S. 658 (1978) liability, (3) violation of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 701, (4) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, (5) unwarranted interference with familial association in violation of the Fourteenth Amendment, (6) unwarranted interference with familial association in violation of the First Amendment, (7) violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, and (8) negligence under California law.

## Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

## Estate of Saoun Pol

Defendants move to dismiss the Estate of Saoun Pol as a plaintiff in this action. (Defs.' Mot. to Dismiss at 6).

Plaintiff agrees and clarifies that "plaintiffs proceed through J.P. as the real-party-in-interest and successor-in-interest" of Saoun Pol.  (Pl.'s Opp'n at 6 (Docket No. 22).)  Accordingly, plaintiff requests to amend the caption to reflect this clarification, and the court will grant leave to do so.  Therefore, defendants' motion to dismiss the Estate of Saoun Pol as a plaintiff in this action will be granted, and the court will refer to a singular "plaintiff."

### Stockton Police Department

The FAC lists both the City of Stockton and the Stockton Police Department as defendants in this matter. Defendants moves to dismiss the Stockton Police Department as a defendant because it is a department of the City, not a separate legal entity.[1]  (Defs.' Mot. to Dismiss at 7).  The Ninth Circuit has held that police and sheriff departments in California are "separately suable entit[ies]" and thus can be subject to liability under § 1983 when acting for a county or city.  See Streit v. Cnty. of Los Angeles, 236 F.3d 552, 565 (9th Cir. 2001) (Los Angeles County Sheriff's Department); see also Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 604-05 (9th Cir.1986) (San Jose Police Department).  The motion to

---

[1] Defendants request that the court judicially notice, in part, the department page on the City of Stockton's website, http://www.stocktonca.gov/government/departments/default.html. (Docket No. 17-1.)  Because plaintiff does not object, the court will grant the request.  (See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F. 3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of [information on a government website], as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein.")

4

1 dismiss this action as against the Stockton Police Department
2 will accordingly be denied.

### Excessive Force Claim Against Miller

Defendants argue the FAC fails to state a claim against Officer Miller because the facts alleged do not show Miller's personal participation in the alleged unconstitutional conduct. (Defs.' Mot. to Dismiss at 8-9). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation. . . ." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). A "team effort" theory of liability is an improper ground for liability and a plaintiff must establish the "integral participation" of the officer in the constitutional violation. Id. at 935 (citing Chuman v. Wright, 76 F. 3d 292, 294 (9th Cir. 1996)).

The FAC does not allege Miller issued any commands to Pol. It states that "Andrade, with his gun at ready, yelled out orders," (FAC at ¶ 23), and again refers to those orders as "instructions issued by defendant Andrade." (Id. at ¶¶ 28; 29). Plaintiff argues in his opposition that Miller followed Andrade's lead in "having his gun at the ready, pointing it at Saoun Pol, and directing Saoun Pol to show his hands." (Pl.'s Opp'n at 7), but the FAC only alleges that Andrade took these actions, not Miller. (FAC ¶¶ 23; 31).

Because the FAC does not allege sufficient facts to state a plausible claim for relief against Miller for excessive force, that claim against defendant Miller will be dismissed with

1 leave to amend.

### Excessive Force Claim Against Jones

At the hearing on defendants' motion, plaintiff's counsel argued that the claim against Jones is based both on supervisorial liability and a Monell theory.  Monell liability against Jones was not addressed in the briefs, and it is not clear to the court what plaintiff's Monell theory is as against Jones.  Any discussion of that theory will therefore have to be left for a later day.  At oral argument, counsel for defendants stipulated that the excessive force claim against Jones individually should not be dismissed, and for that reason the motion to dismiss that claim as against Jones in his individual capacity will be denied.

### Excessive Force Claim Against the City

In plaintiff's Opposition to Defendants' Motion to Dismiss, plaintiff states that plaintiff does not oppose dismissal of the excessive force claim against the City.  (Pl.'s Opp'n at 9).  Accordingly, that motion will be granted.

### Rehabilitation Act and Americans with Disabilities Act

Plaintiff's claims under Title II of the ADA and Rehab Act are brought only against the City and Stockton Police Department.  (FAC at ¶¶ 71; 78).  Both Title II of the ADA and the Rehab Act proscribe discrimination on the basis of disability by state or local governments or their instrumentalities, although the Rehab Act applies specifically to programs receiving federal funding.  See 42 U.S.C. § 12131(1)(B); 29 U.S.C. § 794(b).  Public entities are vicariously liable for the acts of their employees under both acts.  See Duvall v. Cnty. of

Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001).  "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act."  Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999).  Therefore, the court will apply the same analysis to the ADA and Rehab Act claims.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Discrimination includes a failure to reasonably accommodate a person's disability."  Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014).  The ADA applies to arrests, and the Ninth Circuit has identified at least two types of Title II claims applicable to arrests: (1) wrongful arrest; and (2) reasonable accommodation.  Id. at 1232.  Plaintiff proceeds under the reasonable accommodation theory.  Title II subjects officers to liability if they "fail[ed] to reasonably accommodate the [plaintiff's] disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees."  Id. at 1232.

Defendants argue that plaintiff fails to sufficiently allege that Pol was a "qualified individual with a disability" under the first element of the requirements to establish a violation of Title II of the ADA and the Rehab Act.  See Duvall, 260 F.3d at 1135; Updike v. Multnomah Cnty., 870 F.3d 939, 949

7

(9th Cir. 2017).  A "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  "Major life activities" is defined as including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

The FAC alleges that Pol "struggled with mental and substance abuse issues" and had a record of law enforcement contacts, including prior mental health detentions.  (See FAC at ¶¶ 13; 15).  The FAC also alleges that Pol's mental health history was known or should have been known to Stockton police officers and that his mental health and substance abuse problems substantially limited his ability to "care for himself, concentrate, think, and communicate."  (See id. at ¶¶ 14; 16). That is sufficient to survive a motion to dismiss for failure to state a claim.  Accordingly, the motion to dismiss the ADA and Rehab Act claims will be denied.

## Interference with Familial Association

Defendants move to dismiss plaintiff's claim for violation of his First and Fourteenth Amendment rights to familial relationship with Pol as against defendant Miller.

"The right to familial association . . . is a fundamental liberty interest protected under the substantive due process clause of the Fourteenth Amendment."  Motley v. Smith, Civ. No. 1:15-905 DAD, 2016 WL 6988597, at *4 (E.D. Cal. Nov. 29,

2016) (citing Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1079 (9th Cir. 2012)). Plaintiff, as the son of the decedent, may bring a substantive due process claim. See Moreland v. Las Vegas Metro. Police Dep't, 159 F. 3d 365, 371 (9th Cir. 1998) ("This substantive due process claim may be asserted by both the parents and children of a person killed by law enforcement officers.") Only official conduct that "shocks the conscience" is cognizable as a due process violation of the right to familial association. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

The First Amendment also protects "family relationships" and the Ninth Circuit has held that claims under the First Amendment "for unwarranted interference with the right to familial association could survive a motion to dismiss." Keates v. Koile, 883 F.3d 1228, 1236 (2018). The Ninth Circuit does not appear to have explicitly articulated a standard under which such claims are analyzed, but district courts have evaluated First Amendment familial association claims under the same "shocks the conscience" standard. See, e.g., Hernandez v. Cnty. of Santa Clara, No. 5:19-cv-07888-EJD, 2020 WL 7227158, at *6 (N.D. Cal. Dec. 8, 2020); L.F. by and through Brown v. City of Stockton, No. 2:17-cv-01648-KJM-DB, 2020 WL 4043017, at *13-14 (E.D. Cal. July 17, 2020); Estate of Osuna v. Cnty. of Stanislaus, 392 F. Supp. 3d 1162, 1177-78 (E.D. Cal. June 25, 2019).

Whether a particular defendant's conduct "shocks the conscience" is determined by the nature of the surrounding circumstances. Porter, 546 F.3d at 1137-39. Where the police have committed an "obviously and easily detectable mistake . . .

that they had time to detect and correct," a deliberate indifference standard may apply to determine whether the officer's conduct shocks the conscience. Id. at 1139. However, "when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply." Id. Under the purpose to harm standard, "[i]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983." Id. at 1140.

Plaintiff argues that interference occurred when "Officer Andrade shot and killed" Pol and that "but for the actual shooting, Officer Miller engaged in identical conduct to Officer Andrade." (Pl.'s Opp'n at 10-11). However, the FAC only alleges specific conduct by Andrade, not Miller. The only conduct that is alleged against Miller is that he may have informed dispatch that they would have Pol at gun point. (FAC at ¶ 23). This alleged conduct does not meet the "shocks the conscience" standard under either of the two above tests. Accordingly, plaintiff's interference with familial associations claims will be dismissed as against defendant Miller with leave to amend.

### Tom Bane Act and Negligence

Defendants' motion to dismiss the Tom Bane Act and negligence claims is based on plaintiff's failure to timely present a claim to the California Government in accordance with the time limits set forth in Cal. Gov't Code § 911.2(a). (Defs.' Mot. to Dismiss at 14). Plaintiff conceded in his Opposition to Defendants' Motion to Dismiss that he presented his claims after

10

the required time limits and does not oppose dismissal of these two claims.  (Pl.'s Opp'n at 13).

At oral argument, counsel for plaintiff stated that plaintiff does not agree to dismissal of these claims as against the individual defendants.  However, plaintiff did not make this distinction in plaintiff's Opposition to Defendants' Motion to Dismiss.  (Pl.'s Opp'n at 13).  Plaintiff was on notice that defendant was moving to dismiss the Tom Bane Act and negligence claims as to all defendants, including the individual defendants, because defendants specifically included, in their motion, argument addressing the time barred nature of the claims as to the individual defendants.  (Defs.' Mot. to Dismiss at 16-17).  Defendants also argued that if the state law claims are not dismissed as to all defendants, they should be dismissed at least as to Jones.  (Id. at 17-20).  Plaintiff did not oppose these portions of Defendants' Motion to Dismiss and simply stated that he does "not oppose dismissal of these two claims."  (Pl.'s Opp'n at 13).  Accordingly, in accordance with plaintiff's lack of opposition, those claims will be dismissed as against all defendants.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion to Dismiss the Estate of Saoun Pol as a plaintiff is GRANTED;

2. Defendants' Motion to Dismiss this action as against the Stockton Police Department is DENIED;

3. Defendants' Motion to Dismiss the excessive force claim as against Miller and the City is GRANTED;

4. Defendants' Motion to Dismiss the excessive force

1  claim as against Jones is DENIED;

2      5. Defendants' Motion to Dismiss the Rehabilitation Act
3  and Americans with Disabilities Act claims is DENIED;

4      6. Defendants' Motion to Dismiss the interference with
5  familial association claims under the First and Fourteenth
6  Amendments as against Miller is GRANTED; and

7      7. Defendants' Motion to Dismiss the Tom Bane Act and
8  negligence claims is GRANTED.

9      Plaintiff may have until January 18, 2022, to file a
10  Second Amended Complaint, if he can do so consistent with this
11  Order.

12      IT IS SO ORDERED.
13  Dated:  November 30, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE